BOLES, *Appellant*, v. BENNINGTON *et al.*

### In Banc, December 23, 1896.

1. **Pleading**: DENIAL OF FRAUD. Where in an action to rescind a contract for exchange of land on the ground of fraud, the answer does not distinctly deny the charge of fraud and notice thereof, such charge will be taken as confessed.

2. **Estoppel**: FORECLOSURE: PURCHASER. Where one contemplating the purchase of land at a foreclosure sale made inquiry of another if it would be safe to run the land up to $700 and the latter who was its former owner replied, "you will be perfectly safe in running it up to one thousand dollars," and makes no statement as to any defect in the title, the latter will be estopped to claim the land on the ground of fraud in the purchaser from him.

3. ———: ———: ———. Such statement need not be the whole inducement for the purchase; it is sufficient if it was adequate to influence the result though other inducements operated with it.

## *Appeal from Dallas Circuit Court.*—HON. ARGUS COX, Judge.

AFFIRMED.

*John S. Haymes* for appellant.

(1) The fraud of Bennington will warrant the setting aside of the deeds. *Bailey v. Smock*, 61 Mo. 213; *Dunn v. White*, 63 Mo. 181; *Caldwell v. Henry*, 76 Mo. 254; *Cottrill v. Krum*, 100 Mo. 397. (2) That the deed to appellant's land was obtained by fraud was shown by the evidence and neither denied by answer or testimony, and was therefore admitted. 18 Am. and Eng. Ency. of Law, p. 498 (1); *Kortzendorfer v. City*, 52 Mo. 204. (3) The only issue made by the pleadings was the question of estoppel. The answer not only fails to allege that defendants were *bona fide* purchasers for value without notice (*Wallace v. Wilson*,

30 Mo. 335) but does not deny the allegation that they took with notice, but simply says they no not *admit* "knowledge of any fraud." This is insufficient, and is an admission. *Holdsworth v. Shannon*, 113 Mo. 508; *Snyder v. Free*, 114 Mo. 360, and cases to second point. (4) If such an issue had have been made it was not sustained by the evidence. Lamun was a dry trustee, parted with nothing of value and therefore not a *bona fide* purchaser. *Aubuchon v. Bender*, 44 Mo. 560; *Fox v. Hull*, 74 Mo. 317. (5) By the taking of the deed of trust from Bennington the Dallas County Bank (or its owners) did not become a *bona fide* purchaser for value. *First.* The records showed title to be in Vandiment and purchase must be from apparent owner. *Boone v. Chiles*, 10 Pet. (U. S.) 177. *Second.* There is no evidence of a valuable consideration being paid. Payment must be clearly shown and fully explained. A recital in a deed or note is not sufficient. Bigelow on Frauds, p. 309, sec. 4; 16 Am. and Eng. Ency. of Law, p. 833, sec. 10c. *Third.* While Brown says appellant never informed him of fraud, he was bound to show he had no notice from any source. Bigelow on Frauds, p. 309. (6) Brown is not a *bona fide* purchaser by reason of his purchase at trustee's sale, for the additional reason that the rule *caveat emptor* applies to such sales. *Banard v. Duncan*, 38 Mo. 170; *Hayes v. Delzell*, 21 Mo. App. 679. (7) Again the deeds under which respondents claim title, including trustee's deed, are quitclaims and they therefore took with notice. *Gibson v. Chouteau*, 39 Mo. 536; *Mann v. Best*, 62 Mo. 491; *Hope v. Blair*, 105 Mo. 90. (8) Hendrix was not a *bona fide* purchaser. He admits he took with notice and has not paid purchase price. 2 Pomeroy's Eq. Jurisprudence, p. 210, sec. 751. (9) There was no estoppel either as to Brown or Hendrix. The latter was told not to buy, while the former says, "I told him

(appellant) I would have to buy the land in order to satisfy our debts as that was the only way we could get anything." He then, in buying, acted upon an already formed purpose and not appellant's conduct and he nowhere says he was in the least influenced by such conduct. This is necessary to constitute an estoppel. *Spurlock v. Sproule*, 72 Mo. 503; *Bales v. Perry*, 51 Mo. 449; *Eitelgeorge v. Association*, 69 Mo. 52; *Acton v. Dooley*, 74 Mo. 63. Nor was Brown's relation to the land changed by appellant's statements. *Burke v. Adams*, 80 Mo. 504; *Monks v. Belden*, 80 Mo. 639.

*Levi Engle* for respondents.

(1) Boles did not rely upon Bennington's representations of title. He sought information from at least one other party (Bennington's father). Had he followed up his inquiries by investigating the records of deeds he could have ascertained whether Bennington had title to the land. Bigelow on Fraud, p. 645, sec. 4; *Smith v. Dye*, 88 Mo. 581. (2) Plaintiff having charged defendants with purchasing with notice of the alleged fraud of Bennington their answer was sufficient to put in issue that question, also the question of the alleged fraud of Bennington, and the burden of proving not only the alleged fraud of Bennington, but also that defendants were not *bona fide* purchasers without notice was on the plaintiff. *Morris v. Morris*, 28 Mo. 114; *Cummins v. Lawrence County*, 1 S. • Dak. 158; *Flood v. Reynolds*, 13 How. Pr. 112. (3) Plaintiff is estopped from disputing the title acquired by Brown. *Moore v. Bank*, 52 Mo. 377; *Sweaney v. Mallory*, 62 Mo. 485; *Melton v. Smith*, 65 Mo. 315; *Bank v. Frame*, 112 Mo. 502; 6 Waite's Ac. & Def., p. 690. Brown having acquired a good title could convey the same and his grantee would take a good title. *Craig v. Zimmerman*, 87 Mo.

475; *Funkhouser v. Lay*, 78 Mo. 458; *Union Savings Ass'n v. Kehlor*, 7 Mo. App. 158; *Chouteau v. Goddin*, 39 Mo. 250; *Longworth v. Aslin*, 106 Mo. 155.

BURGESS, J.—This suit was instituted for the purpose of having rescinded a contract for the exchange of lands entered into by plaintiff and the defendant Bennington; to set aside certain deeds described in the petition, and to reinvest in plaintiff the title to a tract of land in Dallas county, deeded by him to said Bennington, by Bennington under trustee's sale to Brown, and by Brown to Hendrix.

The petition alleged that, in consideration for the land conveyed by plaintiff to Bennington, he, Bennington, to induce plaintiff to make the exchange, agreed to pay him $200, and convey to him by good and sufficient deed of warranty, eighty acres of land in Polk county, Missouri, to wit: the north half of the southeast quarter of section 32, township 34, range 23, and, with intent to cheat and defraud him and to induce him to make the trade, willfully, falsely, and fraudulently stated and represented to plaintiff that said land was good land; that he had good title to it in fee, and that, relying upon and confiding in said statements, representations, and, by reason thereof, he was induced to and did on the fifteenth day of November, 1889, convey to Bennington the Dallas county land which he then owned and put him in possession thereof; that Bennington paid to him the $200, as per agreement, and on the twenty-first day of November, 1889, executed to plaintiff a deed to said Polk county land, and the plaintiff shortly thereafter took possession of it under his said deed; that Bennington had no title to the land attempted to be conveyed by him to plaintiff, which he learned for the first time after he moved on it, and very

shortly thereafter abandoned its possession; that the land he traded to Bennington was worth $1,000.

The petition further alleged that, after the trade, Bennington executed a deed of trust on the land, which plaintiff had theretofore conveyed to him, to the defendant Lamun, trustee, to the use of the defendant Dallas County Bank, to secure an indebtedness which he owed to it; that the land was subsequently sold under said deed of trust, and that defendant Brown became the purchaser for it at said sale, with notice of plaintiff's equities, and that defendant Hendrix, to whom Brown subsequently sold and conveyed it, also had notice of his equities, at the time of his said purchase.

The petition then offered to refund the $200 received by plaintiff in part consideration for the exchange of lands, and to reconvey all interest in the Polk county land to any person whom the court might direct, and prayed that the contract might be rescinded, etc.

Bennington, Vandiment, and Routh made default.

Brown, Dallas County Bank, Lamun, and Hendrix answered, denying all knowledge of any fraud on the part of Bennington, and alleged, by way of estoppel, that after the land in contest was advertised for sale under the Bennington deed of trust by Lamun, trustee, and before the day of sale thereunder, plaintiff told defendant Brown that the title was all right, and the land worth $1,000; that he would be safe in buying it at $700, and to go ahead and do so; that Brown, relying upon said statements, was induced to purchase the land at said trustee's sale. The answer also averred that before defendant Hendrix purchased the land from Brown plaintiff told him to go ahead and buy it, there would be no trouble about it, and, relying upon said statements, he did buy it.

There was judgment for the defendants who answered, and plaintiff brings the case to this court by appeal for review.

Boles executed a deed to Bennington for the land in question on the fifteenth day of November, 1889, and on the thirteenth day of February, next thereafter, Bennington executed a deed of trust on the same and other lands to John A. Lamun, trustee, to use of Dallas County Bank, of which defendant Brown and J. P. Brownlow were owners, to secure the payment of several notes therein described. On default being made in the payment of the notes Lamun advertised the land for sale under the deed of trust on the first day of September, 1890, at which sale Brown became the purchaser of the land and received the trustee's deed therefor.

Brown testified that after the land was advertised for sale under the deed of trust, and about ten days before the sale, he met plaintiff in the road and stated to him that the land was going to be sold and he would have to buy it in order to save their debt, and inquired of him whether it would be safe to run it up to $700, and Boles replied, "You will be perfectly safe in running it up to $700, it is worth a thousand;" that Boles made no claim whatever as to there being any defect in the title.

Plaintiff testified that he had no recollection of meeting Brown in the road, and denied ever having such a conversation with him, or that he ever told him the title was all right.

After the purchase by Brown, Boles went into Brown's office, and was talking about the land, when Brown said to him, "Boles, have you got any claim on that land at all?" He then told Brown how Bennington had cheated him out of the land, when Brown said to him, "Why didn't you tell me before the sale when I met you in the road and you advised me to run it up

to $700; why didn't you tell me then that you had some claim on the land?" Boles replied, "that he didn't consider it was any of his (Brown's) business." Two witnesses testified that they were present in Brown's office at the time of the conversation between Boles and Brown, and stated it substantially as Brown did. Boles also admitted that this conversation was as Brown had stated it.

In so far as the fraudulent conduct of Bennington is concerned the evidence is all one way. No one testified to his statements and representations to Boles except Boles himself which clearly sustained the allegations in the petition as to that question. It was also shown by record evidence that Bennington never had title to the land deeded by him to Boles. That he obtained Boles' land by fraud and deceit there can be no question, under the evidence.

Fraud being proved as alleged there are but two other questions presented by this record for consideration—one of notice of defendants of the fraud, the other estoppel on part of plaintiff.

It is contended by plaintiff that the answer of defendants does not deny the allegations in the petition with respect to the fraud practiced upon him by Bennington, or that they had notice thereof, and that by reason of the failure to deny, both the fraud and notice thereof stand admitted.

The only part of the answer that can possibly be considered as having any bearing upon these questions is as follows: "And defendants for their separate answer admit the execution of all the deeds for the lands in controversy in Dallas county as alleged in plaintiff's petition, except that the deed from Boles was to Bennington—whether it was to Bennington or Vandiment these defendants do not know and are un-

able to state; and except that defendants had any knowledge of any fraud of Bennington or any one else.''

While the answer does not in direct terms admit these allegations, it does not deny them. Section 2049, Revised Statutes, 1889, requires that, ''the answer of the defendant shall contain * * * a general or specific denial of each material allegation of the petition controverted by the defendant, or any knowledge or information thereof sufficient to form a belief.'' Section 2073 provides that every material allegation of the petition not controverted by the answer shall, for the purposes of the action, be taken as true. It would seem that the statute does not permit of the latitude of indirect denial of the allegations of the petition resorted to by the defendants in their answer.

It is true that plaintiff might have moved to strike that part of the answer out or to have made it more definite and certain, but he was not obliged to do so. *Snyder v. Free*, 114 Mo. 360.

The allegations of fraud on the part of Bennington and notice thereof on the part of the other defendants were material, and it is impossible to determine from the answer whether the pleader intended to admit or deny them. Such an indefinite and uncertain pleading is not in accordance with our code of civil procedure nor the rulings of this court. *Long v. Long*, 79 Mo. 644; *Young v. Schofield*, 132 Mo. 650.

We must, therefore, hold that the allegations in the petition with respect of those matters, stand confessed by the answer.

Plaintiff insists that there was no estoppel either as to Brown or Hendrix.

It may be conceded that if the facts in proof do not estop plaintiff from claiming the land as against Brown, they do not as against Hendrix who claims title through *mesne* conveyance under Brown.

"Estoppel *in pais* may be defined to be a right arising from acts, admissions, or conduct which have induced a change of position in accordance with the real or apparent intention of the party against whom they are alleged." Big. on Estop. [4 Ed.], 445. See, also, *Guffey v. O'Reiley*, 88 Mo. 418. Statements in order to preclude the party by whom made from asserting or claiming to the contrary must be material and such as would naturally lead a prudent man to act upon them.

Now, at the time Brown met plaintiff in the road and asked him whether it would be safe for him to run the land up to $700 at the trustee's sale, plaintiff gave him no intimation that he claimed it, or that he had been defrauded out of it, but told him to go ahead and buy it, that it was worth $1,000. No prudent man would have hesitated, under the circumstances, to buy the land, and it would be a fraud upon defendants to rescind the sale to Bennington, and set aside the deeds sought to be set aside by this action, under this state of facts.

The court must have found that Brown bought the land relying upon plaintiff's statements to him, to some extent at least, and we will defer to that finding, as the evidence was sufficient to support it. It is true that Brown admitted that he told plaintiff he would have to buy the land at the trustee's sale in order to save their debt, which tended to show that he did not rely entirely upon what Boles said at the time of the conversation between him and Brown in the road, but the law does not require that such statements in order to amount to an estoppel, should have been the sole inducement to the purchase by Brown; "if it were adequate to the result,—that is, if it might have governed the conduct of a prudent man,—and if it *did* influence the result, that will be enough, though other inducements operated

with it." Bigelow on Estoppel, *supra*, 582; *McAleer v. Horsey*, 35 Md. 439. The judgment is affirmed. All concur except ROBINSON, J., who dissents.