## PAPE ET AL. *v.* PAPE ET AL.

### [No. 9,471.    Filed March 15, 1918.]

1. INSURANCE.—*Life Insurance Policy.—Construction.—Right to Proceeds.*—Where, in an application for a policy of life insurance, insured, in answer to the question, "If for the benefit of the wife, state precisely whether it shall be paid to her children, to his children, or the children of the two, if she be not living at its maturity," stated, "Their children," and the policy was made payable to insured's second wife, or if she was not living to "their children," insured's children by both marriages, on his being predeceased by the second wife, were entitled to a proportionate share in the proceeds of the policy.    p. 164.

2. INSURANCE.—*Life Insurance Policy.—Contingent Interests.*— Upon the delivery and acceptance of a life policy payable to insured's second wife for her sole use if living, or if not living to "their children," a son of insured by his first wife took an interest in the policy contingent upon his and insured's surviving the primary beneficiary, which would have terminated had the son predeceased the primary beneficiary, in which event his heirs would have had no interest in the insurance.    p. 168.

3. INSURANCE.—*Life Insurance.—Vested Interests.*—Where a life insurance policy contained no provision for a change of beneficiary, the primary beneficiary took a vested interest therein which terminated upon her predeceasing insured.    p. 168.

4. INSURANCE.—*Life Insurance Policy.—Right to Proceeds.—Heirs of Secondary Beneficiary.—Interests.*—Under a policy of life insurance payable to insured's second wife for her sole use if living or, if not, to their children, upon the death of the second wife, insured's children who survived the second wife, including a son by insured's first wife, took vested interests in the policy, and upon such son's subsequent death his heirs succeeded to his interest, and were entitled upon the death of the insured, to their distributive shares therein.    p. 169.

5. ESTOPPEL.—*Estoppel by Silence.—Diligence in Ascertaining Facts.*—Where, on insured's manufacturing company, which was managed by his son, becoming financially embarrassed, insured's brother agreed to indorse renewal notes for money owed by insured and the company on condition that policies on insured's life be assigned to him, and the son, being relied on by the brother, who could neither read nor write, to select policies which were assignable, drafted a written assignment of the policy in suit, which was not assignable and in which he had a vested

interest, facts unknown to the brother, and the latter, accepting such policy as collateral, was thereby induced to become surety on the renewal notes, and was subsequently compelled to pay the same, the son, having remained silent as to his interest, was estopped to assert any right in the policy involved as against the brother; and, in view of the brother's illiteracy and the fact that the policy was not delivered to him until four months after the assignment, he was not chargeable with lack of diligence in learning the nature of the policy assigned, as the son's failure to assert his rights amounted to affirmative conduct reasonably calculated to mislead insured's brother, so that the son should not be heard to say that the brother was not diligent because he relied thereon. p. 169.

6. INSURANCE.—*Life Insurance.—Policy.—Interest in Proceeds.—Evidence.—Sufficiency.*—In an action on a life insurance policy involving the rights of plaintiff, insured's brother, to whom the policy had been assigned in consideration of his having become surety on certain notes, and of insured's son to the proceeds of the policy, evidence showing that plaintiff who had for some years indorsed notes for insured, refused to indorse certain renewal notes, that insured thereupon suggested to his son, who managed his business affairs, and to plaintiff that certain life policies be assigned to him for security, that the son then stated the amount of assignable life policies held by insured, whereupon plaintiff, being satisfied with the suggested arrangement, signed part of the notes and the next day, after insured promised that the policies previously mentioned would be properly assigned, indorsed the remainder of the notes, and that the assignment, which was prepared by the son, included a policy in which he had an interest and which he knew could not be assigned, was sufficient to warrant the inference that plaintiff's indorsement was influenced by the son's conduct in respect to the policy, so that the son was estopped from asserting any interest in the proceeds thereof. p. 174.

7. ESTOPPEL.—*Estoppel by Conduct.*—Where insured's son prepared an assignment of life policies to insured's brother to induce him to become surety on certain notes and it was contended that the son knowingly included in the assignment an unassignable policy in which he had an interest, and that he was therefore estopped to assert any rights in such policy, as against the brother, if what the son said or did in reference to the assignment was such as might have influenced a prudent man and if it did influence the result, the son was estopped to claim any interest in the proceeds of the policy, though other influences operated with his conduct. p. 174.

8. INSURANCE.—*Life Insurance.—Interest of Beneficiary.—Evidence.—Admissibility.*—Generally, where a life policy contains no provision authorizing a change of beneficiary, proof of anything said or done by the insured after the beneficiary's interest has vested is not permissible to defeat the rights of such beneficiary. p. 176.

9. EVIDENCE.—*Parol.—Beneficiary of Life Policy.—Intention.*—Where it is necessary to resort to extrinsic oral evidence to aid in arriving at who were intended as beneficiaries of a life policy by any answer in insured's application, the inquiry should be limited to evidence of intention at a date not so remote from the time of the making of the application and the writing of the insurance as to afford time and opportunity for a change of desire and purpose on the part of insured. p. 177.

From Allen Superior Court; *Carl Yaple,* Judge.

Action by William Pape against the Mutual Life Insurance Company of New York, in which the company filed an interpleader making parties all living children of insured, and the several parties joined issues by way of cross-complaints and other pleadings. From the judgment rendered, Charles G. Pape and others appeal. *Affirmed.*

*Harper & Fuelber* and *Leonard, Rose & Zollars,* for appellants.

*Martin H. Luecke, Colerick & Hogan* and *Thomas & Townsend,* for appellees.

HOTTEL, J.—The questions presented in this appeal had their origin in a suit on an insurance policy. The undisputed facts developed at the trial in the court below, pertinent and necessary to an understanding of said questions are in substance as follows:

The life insured by the policy involved was that of Carl Pape, hereinafter referred to as "C." He was twice married, and had children by each wife. By his first wife, Wilhelmina, he had five children, whose names and the dates of whose births are respectively as follows: Elizabeth (Pape) Isreal, born in 1859;

William Pape, born in 1862; Henry Pape, born in 1867; Emily Pape, born in 1870, and Sophia (Pape) Buuck, born in 1872. All these children, except William, are named as appellees. Wilhelmina died December 16, 1872, and C married his second wife, Caroline, June 16, 1873. By this marriage children were born as follows: Charles G. Pape, July 16, 1875; Minnie Pape, July 5, 1877; Albert O. Pape, November 7, 1880; Edward Pape, July 25, 1884; Walter Pape, March 9, 1887, and Edna Helen (Pape) Shober, August 17, 1890. .Said Minnie died in infancy on April 13, 1882. The others are appellants. Said William Pape died on September 24, 1908, leaving as his only heirs at law, his widow, Caroline Pape, and five children, viz., Roy Pape, Estella Pape, Carl Pape, Clarence Pape, all of whom, except Roy, were minors when this action was commenced.

On September 22, 1879, C made a written application to the Mutual Life Insurance Company of New York for a policy of insurance upon his life. Upon this application the policy herein involved was issued September 26, 1879. C had a brother William to whom he assigned said policy in the year 1909. C and his second wife lived together as husband and wife until her death on April 27, 1908. C died April 25, 1911, survived by all his children above named except Minnie and William.

On May 2, 1912, William Pape, C's brother, filed his complaint in the trial court against the Mutual Life Insurance Company of New York, alleging therein the issuing of said policy, and the assignment thereof to him, and that he was entitled to the proceeds thereof, and making said policy and assignment parts of said complaint by way of exhibit. Said company appeared in court to said complaint and filed

an interpleader, in which it admitted the execution, delivery and validity of the policy, making parties thereto all the living children of said C by both marriages, and asking that they be substituted as defendants in its place, and that it be permitted to pay the proceeds of the policy into court and be discharged from further liability thereon. This petition was allowed, and pursuant thereto said company paid into court the sum of $3,049, and was discharged from further liability. On July 11, 1913, said company was granted leave to amend their interpleader by making parties defendant the heirs of said William Pape, the deceased son of C, viz., Caroline Pape, his widow, and Roy, Estella, Carl, Clarence and Gladys Pape, his children. Said persons appeared, and upon the suggestion that Estella, Carl, Clarence and Gladys were minors, Harry G. Hogan was appointed their guardian *ad litem*. Said heirs and said guardian are appellees herein.

These various parties, by way of cross-complaints and other pleadings, joined issues upon their conflicting claims in the proceeds of said policy. The court, upon request of appellants, made a special finding of facts, and stated conclusions of law. These findings and conclusions were in favor of appellees, and judgment was rendered accordingly. A joint motion for new trial filed by all the appellants, and a separate motion filed by Charles G. Pape were each overruled.

The errors assigned and relied on for reversal are as follows: (1) The court erred in overruling appellants' demurrer to the cross-complaint of appellees Elizabeth Israel et al.; (2) the court erred in overruling appellants' demurrer to the cross-complaint of appellees Caroline Pape et al.; (3) the court erred in overruling appellants' demurrer to the cross-com-

plaint of Caroline Pape, Roy Pape, and the minor heirs of William Pape by their guardian Harry G. Hogan; (5), (6), (7), (8) the court erred in its first, second, third and fourth conclusions of law, respectively; (9) the court erred in each of its conclusions of law; (10) the court erred in overruling appellants' motion for a new trial. Appellant Charles G. Pape assigns in addition the overruling of his motion for a new trial.

The determination of the questions sought to be raised by appellants under their first, second and third assignments, *supra,* depends upon the construction of the policy of insurance here involved, and, inasmuch as appellants concede in their brief that the same questions "will be raised by not only the sufficiency of the evidence but the special findings," we will pass to a consideration of the other assigned errors relied on for reversal.

It will be necessary to an understanding of these questions that we set out the substance of the material facts found by the court. In addition to the general undisputed facts above indicated, the special finding sets out said application of C for insurance and the policy issued thereon, the parts of which pertinent and necessary to an understanding of said questions are as follows:

The application:

"3.  A.  State the amount of insurance applied for.  *  *  *  D.  If for the benefit of the wife, state precisely whether it shall be paid to her children, to his children, or to the children of the two, if she be not living at its maturity. *  *  *  A.  3000.  *  *  *  D.  Their children.  *  *  *."

The policy:

"The Mutual Life Insurance Company of New York * * * in consideration of the application for this policy and of the several statements made therein, promises to pay * * * unto Caroline Pape, wife of Carl Pape * * * for her sole use, if living, in conformity with the statute, and if not living to their children, or their guardian for their use, Three Thousand Dollars * * *."

Other facts found specially by the court pertinent to said questions are as follows: C was for a number of years engaged in the manufacturing business in Ft. Wayne, Indiana, and operated a corporation known as the Fort Wayne Wind Mill Company, all the stock of which C had purchased and held up to the time when, in 1909, he made an assignment for the benefit of his creditors. He was the sole owner of said business and had full management thereof for a number of years prior to said assignment. During said period he had borrowed extensively from banks in Ft. Wayne and towns in the vicinity thereof, to secure which loans he had given his notes and notes of said corporation, among which were notes, aggregating in amount about $24,000, indorsed by the appellee William Pape, his brother. Said indebtedness had been carried for a number of years, and the notes had been from time to time renewed as required by the banks. On March 1, 1909, said C was financially embarrassed, and contemplated making an assignment of all his property for the benefit of his creditors. Said William knew this, and before said assignment was made was insisting upon the assignment to him of certain policies, including the one in suit. C continued to operate said

corporation up to about the first of June, 1909, at which time he retired from business, and so remained until his death. On or about September 28, 1909, C conveyed all his said property to a trustee for the benefit of his creditors. For two years prior to said conveyance, appellant Charles G. Pape, C's son, was employed by C as bookkeeper and manager of said company, and as such had access to C's private papers and was familiar therewith. In the latter part of 1908 and 1909, said Charles G. Pape informed said William that he, William, was surety on about $12,000 worth of notes for said corporation. About said time said William found that he was in fact on paper for C, and for said company, to the extent of about $20,000. William thereupon refused to renew said notes, unless he would be secured by collateral, whereupon it was proposed by C that he assign to William his policies of life insurance. When C attempted to assign said policies he was informed by his son, Charles G., that he could not assign all his policies, that one had been assigned to him, Charles G., and that C had only three left which could be assigned. Whereupon Charles G. produced three policies and wrote out an assignment, in which said three policies were mentioned, which assignment C and William signed, and was as follows:

"Fort Wayne, Ind., March 1, 1909."

"This is to acknowledge the transfer *as collateral* only the following policies—to Wm. Pape, Sr.

| | |
|---|---|
| Metropolitan Life Ins. Co.<br>No. 201890 | 2500.00 |
| The Mutual Life Ins. Co.<br>No. 205043 | 3000.00 |

John Hancock Mutual        2500.00
Life Ins. Co. No. 75642

"If obligations are liquidated policies are to revert back to Chas. Pape.

C. Pape."

C made the foregoing assignment on March 1, 1909, and from said date said William paid the premiums on all of said policies, and upon the policy in suit amounting to $154.29, until the death of said Carl. Said assignment was in the handwriting of said Charles G. Pape. C and said William were unable to read or write in English.

Thereafter, on July 7, 1909, C executed the following assignment, pursuant to the provisions of said policy, viz.,

"Form of Assignment:

"For one dollar,   \*   \*   \*   and   \*   \*   \*   other valuable considerations  ·  \*   \*   \*   I hereby assign, transfer and set over to William Pape \*   \*   \*   all my right, title and interest in this policy, No. 205043, issued by The Mutual Insurance Company of New York and for the consideration above expressed I do also for myself, my creditors and administrators, guarantee the validity and sufficiency of the foregoing assignment to the above named assignee, his executors, \*   \*   \*   and their title to said property well forever to warrant and defend. ·

"Dated   \*   \*   \*   this 7th day of July 1909.
"C. Pape."

In consideration of the assignment of these policies said William became surety on the renewal notes

and became and continued to be obligated in the sum of about $24,000. Said policies were not delivered to said William until after the said July 7, 1909. At the time of said assignment of March 1, 1909, said William was, and now is, unable to read or write English. He never examined said policies nor had them examined to determine whether they were assignable, but relied on Charles G. Pape to select such policies as were assignable, for the purpose of securing said William as surety on said notes.

Said Charles well knew at the time of the assignment so written by him that said policy was not assignable and well knew that said William could not read or write English, and that William and C relied on him, Charles, to select the policies that were assignable, and William, relying upon the conduct of Charles, and induced by his conduct as to this policy, before set out, became surety upon the renewals of said notes for said C and said mill company to the extent above referred to, and he did so believing that C had the right to assign the same, and having no notice or knowledge that Charles G. had or claimed any right in said policy.

By reason of becoming surety on said notes, William has been compelled to pay for said C and for said company, $8,953.31, and is now obligated to pay between $10,000 and $12,000, and there are no assets of the estates of said C or said company from which he can be reimbursed.

The conclusions of law stated by the court are, in substance, as follows: (1) That said William Pape has an interest in said policy to the amount of the premiums advanced by him on said policy, viz., $154.29; and said William has, in addition thereto,

the interest of the defendant Charles G. Pape, the same being one-tenth of said $3,049, and one-tenth of the accrued interest thereon. (2) That said Charles Pape is estopped by his conduct to claim any interest in said policy, and should have and recover nothing herein, and judgment should be against him for costs on his cross-complaint. (3) That Albert O. Pape, Edward A. Pape, Walter O. Pape, Edna Helen Shober, Louise Isreal, Henry Pape, Emilie Pape and Sophia Buuck are entitled to and should receive each one-tenth; that the children of William Pape, deceased, the son of the assured, to wit, Estella Pape, Roy Pape, Carl Pape, Clarence Pape and Gladys Pape, are entitled to and should receive each one-fiftieth of the proceeds of said policy of insurance and the accrued interest thereon in the hands of * * * trustee; that the said * * * trustee be ordered and directed to pay said money and the in-tenth; to Edward A. Pape, one-tenth; to Walter O. Pape, one-tenth; to Edna Helen Shober, one-tenth; to Louise Isreal, one-tenth; to Henry Pape, one-tenth; to Emilie Pape, one-tenth; to Sophia Buuck, one-terest; to Edward A. Pape, one-tenth; to Walter O. fiftieth; to Carl Pape, one-fiftieth; to Clarence Pape, one-fiftieth; and to Gladys Pape, one-fiftieth. (4) That the plaintiff William Pape and the defendants Louise Isreal, Henry Pape, Emilie Pape, Sophia Buuck, and the heirs of William Pape, deceased, to wit, Estella Pape, Roy Pape, Carl Pape, Clarence Pape and Gladys Pape, are entitled to a judgment for costs against the defendants Charles G. Pape, Albert O. Pape, Walter Pape, Edward A. Pape and Edna Helen Shober.

The correctness of each of these conclusions of law is challenged by appellants.

It is contended that the court erred in its third and fourth conclusion of law and in each thereof because the application and policy set out in 1. the finding of facts show that the only persons entitled to participate in the proceeds of the policy are the five children of C by his second marriage. This contention is based on appellants' construction of the words "their children" in the policy.

In the case of *Lehman* v. *Lehman* (1906), 215 Pa. St. 344, 64 Atl. 598, a widower with six children married a widow with one child and had by her two children. After this marriage he took out a policy of insurance upon his life, whereby the insurer promised to pay the amount of the policy to his wife, "in trust for herself and their children, in equal shares." The question arose whether his children by the first marriage were entitled to participate in the insurance. The Supreme Court of Pennsylvania affirmed a judgment in favor of said children, upon an opinion in which it was said, on pages 348, 349, 350 and 351: "There is nothing in the context to aid the appellant's construction of the words 'their children' in the beneficiary clause of the insurance policy. Nor are any circumstances shown which it may be inferred would have been likely to influence the insured to prefer one set of his children over the other. The suggestion that naturally he would be concerned especially for the children of his second wife because they were younger would not be without force if there were any evidence that at the time he took the policy the children by his first wife were not dependent members of his household, they were adults or that

all of them had reached an age when it might be presumed they were self-supporting or soon would become so. But the record contains no evidence of that kind and there is no ground for surmise even, that there was such a difference between the ages of his youngest children by his first wife and the age of his oldest child by his second wife as would naturally incline him to discriminate in favor of the latter. There is also a total absence of evidence that at the time the policy was issued the children of his first wife owned any property in their own right or that the insured had made or had the ability to make any other provision for them; * * * In short, there is nothing in the context, or in the circumstances under which the policy was taken, or in the subsequent conduct of the insured to aid the appellant's contention that the insured intended to exclude his children by his first wife. It must be sustained, if at all, because that is the absolute meaning of the words used in the beneficiary clause. But the words 'their children' may be used in one connection to designate the children having a common parentage on both sides and in another connection to designate the children of the husband and the children of the wife spoken of. Neither law nor common usage has affixed such unvarying meaning to the word 'their' as to prevent its appropriate use for the latter purpose. In determining the sense in which they were used in a contract or in a will regard must be had to the subject-matter. * * * Here the insured, in making a provision to take effect upon his death for those dependent upon him, used words, which without violence to the sense in which they are commonly used, may be construed to include all those coming equally

within the reason of the provision, and there is nothing in the context or in the extraneous circumstances from which the intention to exclude any may be safely inferred. He must have known that his words were susceptible of this construction, and therefore it may be safely assumed that if he had intended to restrict the benefits of his provision to his children by his second wife he would have been careful not to choose words that were easily susceptible of a broader construction.''

We think that these remarks are applicable to the case at bar. It can hardly be contended that the words ''their children'' have any such fixed meaning that they could not be construed to mean the children of the husband and the children of the wife, rather than the children having a common parentage only, nor do the facts found by the court necessitate such a construction. From the findings it appears that when the insured applied for the policy in suit his oldest child by his first marriage was a female about twenty years of age, and his youngest child by that marriage was about seven years old and that he then had two children by his second marriage who were respectively two and four years old. It is not likely, in view of their ages, that he would have preferred the children of the second over those of his first marriage.

But appellants urge that the answer to question ''3.D.'' in the application set out in the finding of facts, *supra,* show that the insured intended that, should his wife predecease him, only his children by her should participate in the insurance.

It is insisted by appellants that if C had desired the children of both his marriages to participate in the insurance, he would have adopted that form of

answer indicated in the question "3. D.," *supra,* by the words "his childern." But if he could aptly have designated all his children by both marriages by the phrase "his children," so, too, under the circumstances, could he aptly have designated the children of the last marriage by the phrase "her children." Had the insured used the phrase contained in said question, "the children of the two," appellants' contention would present a more serious question. The fact that he did not use this phraseology where it was desired to make the children of the common parentage only the beneficiaries, but used instead the more comprehensive words "their children," is in our judgment significant. We think it reasonable to assume that his refusal or failure to adopt such answer in all probability resulted from the fact that he understood the phrase "the children of the two" to mean only those having a common parentage, and that by the phrase "their children" he intended to designate all his said children as distinguished from those of the second marriage only. As before stated, had he intended to provide first for his wife, and then, in the event of her predeceasing him, for her children, he could have done so by using the first phrase suggested by the very question that he was answering, viz., "her children." Instead, he used words reasonably susceptible of a construction broad enough to include all his children of both marriages, and the comparative ages of the two sets of children being such as to bring both sets equally within the reason for the provision of insurance, and no reason appearing why he should make any distinction between the children of the two wives, it may be safely assumed that had he intended to restrict said provision to his children by the second marriage, he would not, under the cir-

cumstances, have used words so easily susceptible of a broader construction. See, also, *Stigler's Exrx.* v. *Stigler* (1883), 77 Va. 163; *State Life Ins. Co.* v. *Redman* (1901), 91 Mo. App. 49; also an unreported New York case discussed in Bliss, Life Ins. (2d ed.) §345.

It is contended, however, that said conclusions of law are erroneous even if said children of said first marriage are entitled to participate in the insurance, in that said conclusions would allow the heirs of said William Pape, the deceased son of C, to participate therein, to the extent of the interest which said William would have had, if he had survived the insured. Apparently, this question has never been decided in this state.

The findings show that C's son William survived his mother, Caroline Pape, the primary beneficiary, and predeceased C, the insured. Upon the delivery and acceptance of the policy, said William took an interest therein contingent upon both his and C's surviving Caroline. This contingent interest of William would have terminated had he predeceased Caroline, the primary beneficiary, in which case his heirs would have had no interest in the insurance. *Burnett* v. *Mutual Life Ins. Co.* (1917), 66 Ind. App. 280, 114 N. E. 232, 235.

The policy in suit contained no provision for a change of beneficiary. Caroline therefore took a vested interest therein, which terminated upon her predeceasing C. *Burnett* v. *Mutual Life Ins. Co., supra; Indiana, etc., Ins. Co.* v. *McGinnis* (1913), 180 Ind. 9, 101 N. E. 289, 45 L. R. A. (N. S.) 192.

Upon Caroline's death, the children of C who sur-

vived her, including said William Pape, took vested interests in said policy, and upon William's subsequent death, his heirs succeeded to his interest, and were entitled, upon the death of the insured, to their distributive shares therein. *Harley, Admr.,* v. *Heist* (1882), 86 Ind. 196, 44 Am. Rep. 285; *Lerch* v. *Freutel* (1901), 36 Misc. Rep. 581, 73 N. Y. Supp. 1078; *Walsh* v. *Mutual Life Ins. Co.* (1892), 133 N. Y. 408, 31 N. E. 228, 28 Am. St. 651; *U. S. Trust Co.* v. *Mutual, etc., Ins. Co.* (1889), 115 N. Y. 152, 21 N. E. 1025; *Millard* v. *Brayton* (1901), 177 Mass. 533, 59 N. E. 436, 52 L. R. A. 117, 83 Am. St. 294; *Michigan, etc., Ins. Co.* v. *Basler* (1905), 140 Mich. 233, 103 N. W. 596; *Smith* v. *Aetna Life Ins. Co.* (1895), 68 N. H. 405, 44 Atl. 531; *Mutual Life Ins. Co.* v. *Spohn* (1916), 170 Ky. 721, 186 S. W. 633.

For the reasons indicated, we think that the conclusions of law are not open to the objections indicated.

Appellants say that the first and second conclusions of law, that Charles G. Pape should be estopped to claim any interest in said policy of insurance, are erroneous because there are no findings that Charles G. Pape's conduct contained any of the elements of fraud. We think that this contention is based on an erroneous conception of the nature of the estoppel sought to be asserted. The findings show that Charles G. Pape was the manager of said Fort Wayne Wind Mill Company, and that said William Pape was willing to indorse the renewal notes of C and of said company upon the condition that the policies of insurance upon the life of said C be assigned to him; that William was ignorant of the fact that the policy in suit was not assignable, and that C's son Charles had any rights therein; that William relied on Charles to select policies that were

assignable; that Charles knew these facts and knew his rights in said policy, and so knowing produced this and two other policies as policies that could be assigned, and drafted a written assignment thereof, and, without disclosing to William the fact that said policy was not assignable, and that he (Charles) had rights therein, permitted William to accept the assignment of the same in consideration of his indorsing said notes; that William was induced by said conduct of Charles to become surety upon said notes, and by reason thereof had been compelled to pay $8,953.31, and was obligated to pay in addition $10,000 or more.

Because Charles was silent as to his rights in said policy when the assignment was made, he should now be estopped to assert those rights. In the case of *Kiefer* v. *Klinsick* (1896), 144 Ind. 46, 54, 55, 42 N. E. 447, 450, it is said: "He, who by his language or conduct, leads another to do what he would not otherwise have done, will not be permitted to subject such person to loss or injury by disappointing the expectations upon which he acted. A change of position by the first party would involve both fraud and falsehood, and the law abhors both. The principles of *estoppel in pais* have been applied to a great variety of cases. The doctrine has no application where everything is equally known to both parties, or where the party sought to be estopped was ignorant of the facts out of which his rights sprung or where the other party was not influenced by the acts asserted in estoppel. But if one stand by and see another purchase property without disclosing his interest to the person about to purchase, he cannot afterward set up a claim of which the purchaser had no notice. Nor is it nec-

essary that the person sought to be estopped be present at the time the sale is consummated. If he have knowledge of the contemplated sale and of the fact that the purchaser is ignorant of his rights it is his *duty* to disclose his interest to such purchaser. Nor is it necessary that there should exist a design to deceive or defraud on the part of the person sought to be estopped. It is enough if when he asserts his claim it would be inequitable and unjust to allow it to prevail against the purchaser. The falsehood and moral wrong which the law denominates fraud appears when the claim is asserted. And this is true whether a party knowingly remains silent or so negligently conducts himself with reference to his rights as to mislead another. *Duckwall* v. *Kisner,* 136 Ind. 99; *Anderson* v. *Hubble,* 93 Ind. 570; *Fletcher* v. *Holmes,* 25 Ind. 458; *Gatling* v. *Rodman,* 6 Ind. 289.'' (Italics inserted.)

The findings in the case at bar show that Charles G. Pape did more than merely ''stand by'' and fail to assert his rights in said policy. They show that he produced said policy as one which could be assigned, and wrote the memorandum of assignment. By this conduct he helped to create the situation which placed upon him the duty to assert his rights.

Appellants say that there is no finding of a misrepresentation of existing facts by said Charles, but merely an expression of opinion as to his rights, which does not create an estoppel. *McGirr* v. *Sell* (1877), 60 Ind. 249; *Ross* v. *Banta* (1895), 140 Ind. 120, 34 N. E. 865, 39 N. E. 732; *Mitchell* v. *Fisher* (1884), 94 Ind. 108. In answer to this, it may be said that the findings do not show that said Charles expressed any opinion whatever, or that he made any

positive representations concerning the policy, but, as before indicated, they do show that he was cognizant of and assisted in the consummation of the transfer and assignment of a policy of insurance in which he now asserts an interest; that he knew that such assignment and transfer was being made by his father, the assignor, to induce his father's brother to sign as surety the father's notes; that he then knew that he had an interest in said policy, and that such policy was not assignable and that his father and uncle could not read or write English, and that they trusted and relied on him "to select such policies on the life of his father as were assignable" and to inform them of the nature of said policies.

Appellant Charles, under the circumstances indicated, having remained silent as to his known interest in said policy, at the time of said assignment, to permit him now to assert and obtain an interest in said policy against the claim of his uncle would operate as a fraud on the uncle, which the law will not permit.

Appellants say also that William Pape was not diligent in learning the nature of the policy assigned to him. In cases of estoppel by silence it has been held that the person relying on the silence must not have had the means of knowing the true state of facts, as, e. g., by reference to the public records, and it has been said that in this respect such estoppel differs from the class of estoppels resulting from affirmative acts or conduct. 10 R. C. L. 694, and note 15. The whole course of Charles' conduct, as shown by the findings—his producing said policy as one that could be assigned, his writing the assignment thereof, and his failure to assert his rights

therein—was more than mere passive silence. It was affirmative conduct, reasonably calculated to mislead William Pape, and he (Charles) should not now be heard to say that William was not diligent because he relied thereon. The findings further show that William was not able to read or write in English and that the policy was not delivered to him until more than four months after the assignment took place. Under such circumstances it cannot be said that he was not diligent.

By the first three grounds of their motion for a new trial, appellants challenge the decision of the court as not sustained by sufficient evidence, and as being contrary to law. The proposition advanced in support of these contentions are the same as those advanced in support of the contention that the conclusions of law are erroneous, viz., the absence of certain of the elements of fraud.

William Pape, the plaintiff, testified substantially as follows: He had been for years indorsing his brother C's notes; Charles G. Pape would at times bring such notes to him for renewal; about March 1, 1909, he called at C's house; at that time there were due some of C's notes, which William said he would not sign. C then mentioned some policies of insurance and said to his son, the appellant Charles G. Pape: "I got $25,000.00 life insurance and let us sign some over so he is secured, so he wont lose anything." Charles G. Pape replied: "Pa, you have only $10,000.00 and $2,000.00 you can't sign away." C then said that he would assign to William $8,000 in insurance policies, which William replied was satisfactory. William then commenced to sign the notes. The next day William with his son, a man of mature

years, went to C's house and asked C if the policies would be assigned to him. C said "Yes." William "commenced signing notes again." The policies were not then delivered to him, but he signed the notes because C promised to assign the policies to him.

Charles G. Pape testified as follows: At the request of C, his father, he sometimes took renewal notes to William Pape for his signature. Most of these notes were in said Charles' handwriting. In December, 1908, his father requested him to come to his home. Upon arrival there, C said: "Bill here is insisting on having all the insurance assigned to him." On March 1, 1909, C telephoned to witness and asked him to bring the policies to his father's house. There C asked him to write the memorandum of assignment above set out, which he did, and he handed it and the policies to his father.

William Pape, Jr., a son of plaintiff, testified that after the death of Carl Pape, Charles G. Pape came to see him about the policy in suit, in which he claimed an interest, and then said to witness that he knew at the time this policy "was signed over that we couldn.'t get the money."

While this evidence is by no means conclusive, we cannot say that it will not permit the inferences which authorize the finding of the trial court. From it the trial court may have, and in fact did, conclude that William's indorsement of the notes was influenced by Charles' conduct in respect to said policy. If what he did or said was such as might have influenced the conduct of a prudent man and if it did influence the result, that is enough, though other influences operated with it. Bigelow, Estoppel (6th ed.); *McAleer* v. *Horsey*

(1871), 35 Md. 439; *Boles* v. *Birmingham Bennington* (1896), 136 Mo. 522, 38 S. W. 306.

Appellants claim that the court erred in sustaining the objections to certain questions propounded to Albert O. Pape. The questions and testimony offered in response thereto are as follows: "Q. I will ask you * * * to state to the court whether or not prior to your father's death, he gave or conveyed real estate to the children of the first marriage?" Upon objection to this question, appellants offered to prove in explanation of "the position and intention of the parties herein as supplemental to the policy as well as the application and as further to assist the court in arriving at the intention of the parties to the contract, that the decedent, Carl Pape, before his death, conveyed a large quantity of real estate to each of the children of the first marriage." "Q. I will ask you to state to the court * * * if you know from your own knowledge whether your father, before his death, did convey property consisting of real estate to each of the children of the first marriage, of the value in the neighborhood of 12 or $15,000.00?" The appellants offered "to prove in answer to this question that * * * Carl Pape before his death, conveyed to the children of the first marriage, real estate of the value of 12 to $15,000.00." "Q. I will ask you * * * to state to the court whether or not at that time you had a conversation with your father about why he was conveying real estate to his first children and not to his second, and whether or not you had any conversation about insurance, if so, what did he say with reference to that?" The appellants offered to prove in answer to this question "that these conveyances were made

by the * * * insured to the parties hereto, as children of the first marriage; that he asked his father why he was conveying property to those children and not to his second children, to which the father replied, that he had taken out several policies of insurance among which was the policy in question, in suit, which would be paid to the children of the second marriage at the time of his death; that he had not provided for the first children, therefore he thought it nothing more than right that they should receive some of the property so as to equalize the matter."

It will be observed that the first and second questions, *supra*, inquire whether at some indefinite time before C's death he gave or conveyed real estate to the children of his first marriage. The contract of insurance was made in 1879. C died in 1911. If the gift or conveyance of the real estate had been made contemporaneously with or before the application, such fact might throw some light on the proper construction of the beneficiary clause of the policy and the answer to question "3.D." of the application, (*Lehman* v. *Lehman, supra*), but the fact that such gifts were made long after the receipt of the policy would not necessarily show C's intention, when the contract of insurance was made, as to the beneficiaries intended therein. It is a general rule that in policies like that here involved, which contain no pro-.

8. vision authorizing a change of beneficiary, proof of anything said or done by the insured after the interest of the beneficiary has vested is not permissible to defeat the rights of such beneficiary. *Masons', etc., Ins. Assn.* v. *Brockman* (1897), 20 Ind. App. 206, 50 N. E. 493; *John Hancock, etc., Ins. Co.* v.

*Daly* (1878), 65 Ind. 6; note 11 L. R. A. (N. S.) 92 *et seq.;* note 49 L. R. A. (N. S.) 853 *et seq.*

We recognize that in the instant case the purpose of the offered evidence was to throw light on the question of who was really intended by the insured as his beneficiary, and that in this respect it might be distinguished from 'those cases in which the rule *supra* is recognized. However, we can see no good reason why the rule should be different. It seems to us safe and wholesome to hold that where it is necessary or proper to resort to extrinsic oral evidence to aid in arriving at who were meant and intended as beneficiaries by any answer in the application of the insured, the inquiry should be limited to evidence which can be said to throw light on the meaning intended and understood by the insured at the time his application and insurance was written. At least, evidence of intention at a date so remote from such time as to afford time and opportunity for a change of desire and purpose on the part of the insured would open the door in such cases to the violation of the general rule indicated *supra.*

The third question, *supra,* was properly excluded for the reason indicated in our discussion of the evidence offered in answer to the first and second questions *supra.*

Finding no reversible error in the record, the judgment below is affirmed.

NOTE.—Reported in 119 N. E. 11. Insurance: meaning of term "children" as used to designate beneficiaries in life policy, 15 Ann. Cas. 529, Ann. Cas. 1913A 300; vested interest of beneficiary in ordinary life policy, 1 Ann. Cas. 684, 11 Ann. Cas. 49, Ann. Cas. 1912B 1144, 19 Am. St. 786, 790. See under (1) 25 Cyc 888 (2-4) 25 Cyc 890, 891; (5-6) 16 Cyc 759; (8) 16 Cyc 734; (9) 25 Cyc 933,