THE MASONS' UNION LIFE INSURANCE ASSOCIATION
*v.* BROCKMAN.

[No. 2,496.    Filed May 20, 1898.]

PRACTICE.—*Admission of Evidence.—Exception.—Appeal and Error.* —No error is committed in refusing an offer to prove a fact or facts where the offer embraces more and is of wider range than the question asked the witness.  *pp. 210-212.*

SAME.—*Evidence.—Life Insurance.*—A question propounded to a witness in an action on a life insurance policy as to whether under the constitution a member had the right to change the beneficiary in his policy is properly rejected as the constitution itself is the best evidence of such fact.  *pp. 213, 214.*

LIFE INSURANCE.—*Declarations of Insured.*—Statements or admissions made by insured are not admissible in evidence in an action on a policy of life insurance for the purpose of defeating the rights of the beneficiary.  *p. 214.*

SAME.—*Ownership of Policy.*—Where an insurance policy is issued upon the life of one person for the benefit of another, and such beneficiary is named in the policy, it becomes the property of such beneficiary from the time it goes into force.  *pp. 214, 215.*

SAME.—*Warranties.*—Warranties in an insurance policy are not favored in law.  *p. 218.*

INSTRUCTIONS.—*Life Insurance.— Warranties.— Guaranty.*— An instruction to the jury in an action on a life insurance policy that "the word warranty means more than an agreement, it means a guaranty," is erroneous, as the words warranty and guaranty have different meanings.  *pp. 217, 218.*

SAME.—*Life Insurance.—Construction of Contract.*—An instruction given to the jury in an action on a life insurance policy that "the

word warranty means more than an agreement, it means a guaranty. Warranties are not favored in law and nothing can be construed as a warranty except that which was and is plainly and unequivocally declared to be such by the parties" is erroneous, as it gave the jury to understand that they had the right to construe the contract between the parties and determine whether the answers in the application amounted to warranties, where such answers were made warranties by the express terms of the contract. *pp. 217-219.*

INSTRUCTIONS. — *Life Insurance.— Contradictory Instructions.—* The court erred in charging the jury in effect in one instruction, in the trial of an action on a life insurance policy, that they might construe the contract between the parties and determine whether certain answers of the insured to questions in the application amounted to warranties, and in another instruction informing the jury that such answers were warranties, and if any answer was untrue the warranty was broken, and the policy void, as such instructions were contradictory. *pp. 217-219.*

SAME.—*Life Insurance.—Contradictory Instructions.—*An erroneous instruction is not cured by a correct instruction on the same matter which is contradictory of the erroneous one, it can only be cured by withdrawing it. *pp. 219-220.*

SAME.— *Life Insurance. — Contradictory Instructions.—* Where the court gives instructions which are contradictory and tend to mislead the jury, the judgment will be reversed. *pp. 219, 220.*

From the Johnson Circuit Court. *Reversed.*

*Marshall Hacker, Charles F. Remy* and *Clifford, Browder & Moffett,* for appellant.

*James F. Cox* and *M. L. Herbert,* for appellee.

WILEY, J.—Appellee, as beneficiary of Henry Brockman, deceased, sued appellant upon a life insurance policy issued by appellant on the life of said Brockman. The complaint was in three paragraphs, but as a demurrer was sustained to the first, no further notice need be taken of it. In the second paragraph it is averred that appellant, on the 19th day of March, 1892, issued a policy of insurance upon the life of Henry Brockman, in the sum of $1,000.00, for and in consideration of a certain initiation fee and premium, which were paid; that by the terms of the policy monthly payments, etc., were to be made, on or

before the 20th day of each month, to the agent of appellant, in the city of Columbus, Indiana; that, in pursuance to said provision of the policy, said Henry Brockman paid all said monthly installments as they became due, up to the 20th day of June, 1894, and on said day, and when said monthly installment became due, he tendered to appellant, through its authorized agent, the sum of $2.15, in legal tender money of the United States, which was the amount of said monthly premium, but which appellant refused to accept for the reason then claimed by appellant, that said Henry Brockman forfeited his policy by reason of drinking intoxicating liquors, and that appellant then and there declared, through its agent, that it would not accept any more dues or installments of premiums from said Brockman; that said Brockman was at all times ready and willing and able to pay all premiums, etc., as appellant well knew, and that he performed all the conditions of said policy on his part; that said Brockman died on the 6th day of August, 1895; that when said policy was issued and all the time up to his death, appellee was his wife; that on April 18, 1895, she furnished appellant with proof of loss of the death of said Brockman, and performed all of the conditions of said policy on her part; that appellant has not paid said sum, and that it is due, etc. A copy of the policy is filed as an exhibit to the complaint.

The third paragraph of complaint is in all essential respects like the second, differing from it only in some immaterial averments as to the agents of appellant, and the payment to them of dues, etc. A demurrer to each of these paragraphs of the complaint was overruled and such ruling is assigned as error. Counsel, however, have failed to discuss their sufficiency, and hence the question is waived.

Appellant answered in three paragraphs, but no

question is presented as to the sufficiency of the answer, and it is unnecessary to state, even briefly, its contents.   There was a trial by jury, and a general verdict for appellee.   Appellant's motion for a new trial was overruled, and judgment rendered on the verdict.

The overruling of the motion for a new trial is the only alleged error discussed.   Appellee insists that the bill of exceptions was not filed in time, and hence the evidence, instructions, etc., are not in the record; but this insistence is not tenable.

Before taking up the questions presented by counsel, we deem it proper to say that appellant's defense rested upon an alleged violation of the terms of the policy and application, which was made a part of the policy; and the second paragraph of answer averred that in said application, said Brockman stated and warranted that he was a total abstainer from the use of intoxicating liquors, and that he did not then, nor would he in the future, "practice any pernicious habit that obviously tended to shorten life," and that after the policy of insurance was issued, and for several months prior to his death, said Brockman drank intoxicating liquors to excess, which was a "pernicious habit and obviously tended to shorten his life," whereby said policy was forfeited.   It was upon this line that the defense was made, and appellant earnestly contends that the facts disclosed by the record, based upon its answer, will preclude a recovery.   Upon this question, however, we cannot disturb the judgment, for the reason that the evidence is conflicting, and the jury having passed upon it, puts it to rest.

In his application for insurance, the decedent Brockman, stated in answer to certain questions, that he had had delirium tremens, and that he had been

insane.   He also stated that at the time of his application he did not use intoxicating liquors.   It is an undisputed fact as it appears from the record, that Brockman, prior to the issuing of the policy sued on, was an habitual drinker of intoxicating liquors, had had the delirium tremens, and had been in the hospital for the insane.   It is the theory of the appellee, and the evidence seems to sustain it, that after the policy was issued, the insured had the *la grippe*, and the contention of appellee is that the disease left him greatly impaired in health, and to such an extent that at times when he was walking he became dizzy, which made him walk and stagger as a drunk man.   On the other hand, the theory of the appellant is that his staggering and dizziness was caused by intoxication. It is upon these two theories that the sharp contention arises, and with this in view, we proceed to a consideration of such questions as are raised by the motion for a new trial and discussed by counsel.

The seventeenth reason assigned for a new trial was sustaining appellee's objection to the following question propounded to Ed. King, a witness for appellant: Q. "State to the jury whether you observed Mr. Brockman's habits and conduct previous to the time he went to the asylum, whether or not he was boisterous?" Upon the court's refusal to permit the witness to answer this question, appellant stated in writing what it offered to prove as follows:   "The defendant offers to prove by this witness in answer to this question and others, that he had an acquaintance with Henry Brockman and had seen him both when drunk and sober for a long period of time, and was acquainted with the peculiarities and ordinary actions of said Henry Brockman when drunk; and offers further to prove that said Henry Brockman when drunk never was at any time noisy or boisterous, and that his con-

duct at the times when he saw him drunk since March 19, 1892, was the same as when he saw him drunk before that time." And the record shows that upon objection of appellee the court refused to entertain such evidence or let the same be proved to the jury. On cross-examination of some of appellant's witnesses, appellee sought to elicit the fact that Brockman was at no time noisy or boisterous, and that his actions and conduct were those of a sick and feeble man, rather than of one who was drunk. The evidence which was offered to contradict this fact, so far as possible, was by showing that before he was in the asylum, and when it is admitted that he was drinking to excess, he was not noisy and boisterous, and that his conduct then, when intoxicated, corresponded to his conduct after the issuing of the policy, when it was claimed by appellant that his conduct was the result of drunkenness and not sickness, etc.

We are not prepared to say whether or not the court erred in excluding the offered evidence, but it seems clear to us that what appellant offered to prove by the answer to the question to which an objection was sustained, was not responsive. The offer to prove was so much broader than the question, and included so many elements not embraced by the question, that there was no available error in excluding it. An offer to prove a fact or facts by "other questions" which "other questions" are never asked, is not reviewable in an appellate tribunal. The question asked the witness might have been properly answered, for it asked the witness to state a distinct fact, but where error is predicated upon the exclusion of evidence, the only way to present it is to ask the question, and then it is for the court to determine its competency. When a litigant offers to prove a fact or facts in answer to a question asked of a witness, and "other questions,"

which are never asked, there is no error in refusing the offer, if the offer embraces more and is of wider range than the question asked.    Neither the trial court nor appellate court can know whether a question in the mind of an attorney is competent or incompetent, when such a question is not made known to the court. To save the point on appeal, the question must be asked the witness, and the proper exception reserved. *Gipe* v. *Cummins,* 116 Ind. 511.    See, also, *City of Terre Haute* v. *Hudnut,* 112 Ind. 542; *Binford* v. *Young,* 115 Ind. 174.

The only responsive and legitimate answer that could have been made by the witness King, to the question asked him, was that he did or did not observe Brockman's habits prior to the time he went to the asylum, and that he was or was not boisterous or noisy.    While it might have been competent for the witness to answer this question, the error in excluding it, if it was error, was not in our judgment, harmful, for, looking at the whole record, it could not possibly have changed the result.    A judgment will not be reversed for a harmless error.    *Rhinehart* v. *Niles,* 3 Ind. App. 553; *Passmore* v. *Passmore,* 113 Ind. 237; *Whitworth* v. *Ballard,* 56 Ind. 279.

The fourteenth reason assigned for a new trial was the refusal of the court, over appellee's objection, to permit J. F. Pancake to answer the following question:    Q. "You may state if you ever had any conversation with Henry Brockman in reference to his drinking?"    On the court's refusal to permit the witness to answer this question, the appellant offered to prove in answer to it, that Henry Brockman after the 19th day of March, 1892, frequently talked to witness about his habit of drinking intoxicants.    Even if appellant had been permitted to prove what its offer shows, it could not have availed it anything, for the offer does not go

to the extent of showing what Brockman said, and as to what he said would not be competent, as we will discuss later.

The fifteenth reason assigned for a new trial was in refusing to permit the witness J. S. Anderson to answer the following question: "You may state to the jury whether or not in the constitution, a member may have the right to change the beneficiary?" In answer to this question appellant made in writing the following offer: "The defendant offers to prove by the witness J. S. Anderson that under the constitution of the defendant, The Masons' Union Life Association, the insured has the right to change the beneficiary in the policy." "And the defendant further offers to prove by the witness J. S. Anderson, that in the latter part of April, 1894, he visited the insured, and had a conversation with him and that he called the attention of the insured to the fact that he was drinking intoxicating liquors to excess and informed him that unless he quit that the policy would be forfeited,.and the assured said that he would quit drinking intoxicating liquors to excess." The court did not err in refusing to permit the witness Anderson to answer the question, which forms the basis for the fourteenth reason for a new trial. The question and offer to prove would not have shed any light upon the question at issue. The fact which appellant offered to prove in answer to the question was that the insured, after the issuing of the policy frequently talked to the witness about his habit of drinking intoxicants. . It will be observed that this offer does not seek to show what the insured said about his habit of drinking intoxicants, but only that he talked about it. Conceding, without deciding that appellant had the right to prove what the insured said as to his habit of drinking intoxicating liquors to excess, after the issuing of the

policy, yet the mere fact that he talked about it, without showing what he said, would not prove a fact. The appellant's offer to prove by J. S. Anderson that under its constitution, a policy holder had the right to change the beneficiary named therein was properly refused. If such proof was competent, it was the duty of appellant to offer the best evidence of it, which was the constitution itself. But in this case, we cannot see what benefit would have accrued to appellant if it had been permitted to prove that fact. The appellee was the original beneficiary named in the policy, and she remained such, and it follows that though the insured might have had the right to make a change, as he did not do so, the appellant was not harmed in the court's refusal to let it make the proof offered.

There are two reasons why the latter part of the offer to prove, in answer to the question we are now considering, was properly refused: (1) The question does not embrace what the offer seeks to prove. Where testimony is excluded, the error, if any, can only be made available by asking a pertinent question of a witness, and if objection is made, stating to the court what testimony or evidence the witness will give in answer to the question proposed, and if an objection is made and sustained, an exception must be reserved. *Gipe* v. *Cummins, supra.* We discussed this principle under the seventeenth reason for a new trial, and need not advert to it further. (2) In cases of this character it is not competent for the purpose of defeating the rights of the beneficiary, to prove the declarations of the insured, which declarations would tend to prejudice such rights. The rule seems firmly established that where an insurance policy is issued upon the life of one person for the benefit of another, and such beneficiary is named in the policy, it becomes

the property of such beneficiary from the date it goes into force.  *Presbyterian Mutual Assurance Fund* v. *Allen*, 106 Ind. 593; *Wilburn* v. *Wilburn*, 83 Ind. 55; *Penn Mutual Life Ins. Co.* v. *Wiler*, 100 Ind. 92, 50 Am. Rep. 769; *Holland* v. *Taylor*, 111 Ind. 121.

In *Damron* v. *Penn Mutual Life Insurance Co.*, 98 Ind. 478, the Supreme Court said:  " 'An insurance policy, issued upon the life of a husband for the benefit of his wife, is her property, and an effectual assignment and delivery thereof to another, even during the lifetime of the husband, can be made only by her.' "

In *Kline* v. *National Benefit Association*, 111 Ind. 462, 60 Am. Rep. 703, it was said:  "The beneficiary took an immediate interest in the policy, and her rights could not be impaired by any act of the assured performed subsequent to the execution of the policy, for the contract is that of an ordinary insurance company, and not that of a benevolent organization."

It is next contended that the court erred in excluding certain evidence, offered by appellant, of the witness J. M. Taylor.  Taylor was the agent of appellant and who wrote and took the application of Brockman for the policy issued on his life.  The question asked of him, and to which the court sustained an objection, was as follows:  "State to the jury, Mr. Taylor, what, if any, explanation you made to Mr. Brockman at the time the application was written, in reference to the meaning of the expression 'that I do not now and will not practice any pernicious habit that obviously tends to shorten life?' "  In response to this question, appellant offered to prove "that at the time the application was written that it was fully explained to Henry Brockman that the clause in the application, 'that he does not now and will not practice any pernicious habit that obviously tends to shorten life,' included the drinking of intoxicating liquors, and that Henry

Brockman at the time understood that if he practiced the habit of drinking intoxicating liquors that the policy of insurance, based upon the agreements and answers in the application, would be null and void, and that said Henry Brockman agreed to the same."

Appellant insists that this evidence was admissible, on the theory that the words used in the application were not clear in themselves, and that the court will avail itself of the meaning and interpretation placed upon them by the parties. We cannot agree with this insistence. The application as made was written, and it was the contract between the parties. It is not shown that the words used in the application were not fully understood by the insured, and, in view of the fact that they were not uncertain, obscure or ambiguous, we may correctly presume that the insured fully understood them. Again, all that was said between Taylor and Brockman prior to that time, and up to the time the application was made, was merged in the writing, and the writing speaks for itself.

As appellant's defense was grounded upon the alleged facts that Brockman used intoxicating liquors to excess, which impaired his health, and was a pernicious habit which obviously tended to shorten life, it was bound to prove such fact; but it was not competent to prove it by conversations that took place between Taylor and the insured prior to the application, and that Brockman understood what the language meant.

It is a part of the common knowledge and observation of human life, that the excessive use of intoxicating liquors tends to shorten life, and each man and woman who has arrived at an age of understanding knows that such excessive use of intoxicants is a pernicious habit. There being nothing ambiguous,

uncertain or obscure in the application, parol evidence as to what was said about it was not admissible.   It was said in *Chaplin* v. *Baker*, 124 Ind. 385, that "it is as well settled by the decisions of this court as a question can be settled, that when parties have finally reduced their contract to writing, all previous negotiations resting in parol are merged into the written contract, and that it alone must be looked to to ascertain the legal rights of the parties."   See 11 Am. and Eng. Ency. of Law, p. 300.

Counsel for appellant next discuss the giving and refusing to give certain instructions, and giving, as modified, certain instructions tendered by appellant. Instruction number four, tendered by appellee, and given by the court, was as follows:   "The word warranty means more than an agreement; it means a guaranty.   Warranties are not favored in law and nothing can be construed as a warranty except that which was and is plainly and unequivocally declared to be such by the parties."   The first and second instructions tendered by appellant and given by the court are as follows:

(1) "By the terms of the policy in this case the application therein mentioned is made a part of it; the answers in the application are warranties, and if any answer is untrue the warranty is broken and the policy void."   (2) "The agreement of the parties that the statements in the application are true, and their falsity in any respect should avoid the policy, removes the questions of their materiality from the consideration of the court or jury or either of them."

It is the contention of appellant that these instructions could not be considered or construed together by the jury without leaving them in doubt as to the most important point in the case.   It is earnestly insisted by the learned counsel for appellant, that in-

struction number four above is erroneous, because it gives the jury to understand that they had the right to construe the contract between the parties; because it told the jury that a warranty means a guaranty, and because it told the jury that warranties are not favored in law.    As to the latter objection it is not well taken.    It is well settled that by reason of the stringent character of warranties in insurance policies, they are not favored in law.    *Union Central Life Ins. Co.* v. *Pauly*, 8 Ind. App. 85; *Supreme Lodge* v. *Hutchinson*, 6 Ind. App. 399; *Northwestern, etc., Life Ins. Co.* v. *Hazelett*, 105 Ind. 212; *Rogers* v. *Phenix Ins. Co.*, 121 Ind. 570; *Penn Mutual Life Ins. Co.* v. *Wiler*, 100 Ind. 92, 50 Am. Rep. 769; *Havens* v. *Home Ins. Co.*, 111 Ind. 90, 60 Am. Rep. 689.

It seems to us that the instruction is, however, erroneous in two essentials: (1) In telling the jury that a warranty means more than an agreement, it means a guaranty.    In legal contemplation, there is a wide difference between warranty and guaranty, and in the sense in which they are used in the instruction they are not synonymous terms.    In the case before us the answers in the application, etc., are made warranties by express terms.    They constitute the contract between the parties.    In law, the term warranty is an engagement or understanding forming a part of a transaction.    It is an absolute understanding or liability on the part of the warrantor, and a contract of warranty is void unless it is strictly and literally performed.    See Rapalje & L. Law Dict. p. 1346.    Also *White* v. *Life Ins. Co.*, 4 Dill. 177, 181; *Jeffries* v. *Life Ins. Co.*, 22 Wall. 47; *Ins. Co.* v. *Pyle*, 44 Ohio St. 19, 29, 58 Am. Rep. 781, 4 N. E. 465.    A guaranty is a collateral promise to answer for the debt, default or miscarriage of another, and is distinguishable from an original and direct contract for the promisor's own

act. Chitty on Contracts, p. 582. (2) It leaves the contract to the construction of the jury. The contract was in writing, plain and unequivocal, and it was the duty of the court to construe it and instruct them just what it meant. It was not proper for the court to say that nothing can be construed as a warranty except that which was and is plainly declared to be such by the parties, for it left the jury to infer that they might construe the contract to constitute a warranty, or otherwise at their pleasure. And it is subject to the further objection that it was for the jury to determine whether or not the parties had "unequivocally declared" such contract to be a warranty. Courts can only put a certain construction upon a contract where such contract is vague, indefinite and uncertain, where it appears that the parties to the contract have so construed it themselves. We have already discussed this question and clearly demonstrated that as there is no ambiguity, etc., in the contract, its construction was for the court.

Instructions 1 and 2 tendered by appellant and given by the court, correctly state the law, and put a construction upon the contract. We are unable to understand how the jury could construe these three instructions together without being in doubt as to what the law was on an important question in the case. The rule is well established in this State that an erroneous instruction is not cured by a correct instruction on the same matter, which is contradictory of a former instruction. *Union Central Life Ins. Co. v. Hollowell, Admr.*, 14 Ind. App. 611; *Summerlot v. Hamilton*, 121 Ind. 87; *McCrory v. Anderson*, 103 Ind. 12; *McCole v. Loehr*, 79 Ind. 430.

When instructions are contradictory and tend to mislead the jury the judgment will be reversed. *State, ex rel., v. Sutton*, 99 Ind. 300. Where a fatally erro-

neous instruction has been given, it can only be cured by a plain withdrawal of it. *Lower* v. *Franks*, 115 Ind. 334. See, also, *Pittsburgh, etc., R. W. Co.* v. *Noftsger*, 148 Ind. 101, where the authorities are reviewed, and Monks, J., said: "Besides, if two or more instructions are inconsistent and calculated to mislead the jury, or leave them in doubt as to the law, it is cause for reversal." *Wenning* v. *Teeple*, 144 Ind. 189. For the error in giving instruction number four tendered by appellee, the judgment must be reversed. Judgment reversed, with instructions to the court below to sustain appellant's motion for a new trial.