WEINSTEIN *v.* STATE OF INDIANA.
[No. 26,148. Filed June 10, 1935.]

 

*Jackiel W. Joseph* and *Theodore R. Dann,* for appellant.

*James M. Ogden,* Attorney-General, and *Robert L. Bailey,* Assistant Attorney-General, for appellee.

ROLL, J.—Appellant was charged by indictment of the crime of receiving stolen property under §2465, Burns 1926, §10-3017, Burns Ann. St. 1933, §2456, Baldwin's 1934, §381, Acts 1905, p. 668. There was a trial by the court and judgment of guilty entered in accordance with the statute.

Appellant filed a motion for a new trial which the court overruled and this ruling of the court is the only error assigned as error on appeal.

The first thirty-two reasons assigned in his motion for a new trial pertain to the admission and rejection of certain evidence. The other four reasons relate to the sufficiency of the evidence to support the verdict, and that the verdict is contrary to law.

It is charged that certain named persons stole a quantity of brass from the Baltimore & Ohio Railroad Company, and that appellant bought the same unlawfully and feloniously and with knowledge that the same had been stolen.

The evidence in many respects is conflicting, but the following facts seem to be well established.

Appellant was engaged as a junk dealer in the city of Indianapolis, and that representatives of the Baltimore & Ohio Railroad Company, hereinafter referred to as the railroad company, called on appellant a few weeks prior to the day in question and told appellant that the

railroad company had suffered recently from the loss of bell metal and brass by theft, and asked appellant if such metal had been offered for sale to him. He answered in the negative and was then told by the railroad representatives that if any one should offer bell metal or railroad brass for sale to hold them and call them by phone. Appellant said that they told him to buy the metal and call them. That these men, Mitchell and Delaney, who were railroad detectives, left their names and telephone number with appellant. That on May 18, 1931, two persons by the name of Sylvester and Orville Able (under an assumed name) appeared at appellant's place of business in a Ford car with some railroad brass and offered to sell the same to appellant. Martin Weinstein, son of appellant, was in appellant's place of business at the time and heard the conversation between his father and the Ables. That he immediately went across the street for the purpose of calling Mitchell and Delaney, but he was unable to find their telephone number in the directory. He came back and obtained the telephone number and returned to the phone. Some woman answered and reported that Mitchell and Delaney were out to lunch. The evidence further shows that appellant obtained the license number of Ables' Ford car and made a memorandum of it. That appellant purchased the brass from the Ables, and in the afternoon took it to the place of business of one J. Solotken, as he says, for safe keeping. Appellant testified that on the evening of May 18, 1931, he made out a report to the police department of the purchase of this brass and reported thereon the license number of the Ford automobile that was being used by the Ables, and that this report was placed in an envelope properly addressed and stamped, and given to the girl that worked in the office of J. Solotken for the purpose of placing

the same in the mail. This girl was a witness and testified that she placed this letter in the mail along with other letters. The state's witnesses testified that the police department did not receive this report from appellant through the mail, but that about three o'clock in the afternoon of May 19, they found the report in a box kept for that purpose in the corridor of the detective headquarters. It was shown in evidence that two city police (Russell and Staggs) called on appellant at his place of business on May 19 in regard to the theft of this brass, and that appellant at that time gave them the license number of the Ford car. That in the afternoon of the same day the two railroad detectives called upon appellant with reference to the same matter. Martin Weinstein was present and heard this conversation between his father and Mitchell and Delaney. While Martin Weinstein was on the witness stand he was asked concerning this conversation. The question was as follows:

"Now on that occasion state whether or not anything was said by either of these men about the license number on the Ford coupe which you had reported to the police department."

The court sustained an objection to this question. Appellant made an offer to prove as follows:

"We offer to prove by this witness that at the time of the conversation between Delaney, Mitchell and the defendant on the afternoon of May 19, 1931, that Mitchell or Delaney, or both, stated to the defendant that they had the license number of the Ford coupe of Sylvester Abel, 731-283; and we offer to prove further by this witness that his father had given the information to these two men, or to Russell and Staggs *prior to that time*."

It is appellant's contention as stated in his brief that:

"The Court erred in refusing to permit Martin Weinstein, called as a witness in behalf of Appellant, to testify about a conversation between the witness and George E. Mitchell and James Delaney, railroad detectives, concern-

ing the license number of the thief's automobile. (Tr., p. 215, l. 10, to p. 221, l. 6.) The State had previously gone into the subject (Tr., p. 136, l. 24, to p. 137, l. 15) for the purpose of showing concealment by the Appellant. The Appellant at the time objected and excepted to the refusal and offered to prove by the witness that at the time of the conversation with George E. Mitchell and James Delaney, the witness did not furnish the two railroad detectives with the license number or any other information concerning the transaction in question. Had the Court permitted the evidence offered to be given, the Appellant would thus have established a basis for an inference that the information had been obtained from the police reports mailed the same evening of the transaction. The State's principal evidence for showing a concealment was the failure of Appellant to make a proper police report as required by an Ordinance of the City of Indianapolis, and Appellant was entitled to introduce evidence to show that this report had been made."

While the record shows that the offer to prove was made after the court ruled instead of before, and perhaps the question asked could have been answered by yes or no. Yet the record discloses that neither the court nor counsel for the state nor counsel for appellant were giving very much attention to the technical side of the record. The record also discloses that counsel and the court fully understood the real question presented and the court by his ruling excluded the evidence which appellant was attempting to introduce, and that the court in fact ruled upon the merits of the question and we shall do likewise.

It is clear that one of the determining factors in the case was whether appellant mailed the report of the purchase of the brass to the police department on the evening of May 18 or placed it in the box at police headquarters on the afternoon of May 19. The license num-

ber was on the report, and therefore there was two sources of information as to the license number of the Able automobile. One from the appellant and the other from the report. If Mitchell and Delaney had the license number of the automobile at the time they were at appellant's place of business on the afternoon of May 19, they obtained it either from appellant or some one to whom he had imparted this information (Russell and Staggs), or the report. Appellant by the offered testimony attempted to show not only that Mitchell and Delaney knew the license number, but that appellant did not tell them what it was. The lower court excluded this evidence on the theory that the state had not inquired about this particular conversation between appellant and Mitchell and Delaney. While the record shows that the state did not inquire about this particular conversation, it also shows that the state did introduce evidence to the effect that the report was not received through the mail, but was found in a box provided for that purpose about three o'clock p. m., May 19. Appellant should have been permitted to introduce such evidence as he had which tended to support his contention that the report was received by mail in due course. We do not mean to hold that the offered evidence would have established this fact, but we do hold that it was competent evidence and a link in the chain to support his theory and should have been considered by the court or jury in deciding the case. Without this evidence in the record appellant was unable to follow up with additional proof which he might have had to the effect that Mitchell and Delaney had not seen or communicated in any way with Russell and Staggs prior to the time of this conversation. Had this proof been made there would have been a strong inference that they must have received it from the report and that the state's evidence

to the effect that the report was not at police headquarters before three o'clock on May 19 was untrue. The offered evidence was competent and material to appellant's case and the offered evidence should have been admitted. It therefore constituted reversible error to exclude it.

The state was permitted to introduce evidence over the objection of appellant that appellant had purchased other stolen property prior to the transaction here in question and that he knew at the time that the property was stolen. This, we think, the state had a right to do for the purpose of showing guilty knowledge, and it has been so held by this court. *Beuchert* v. *State* (1905), 165 Ind. 523, 76 N. E. 111; *Carpenter* v. *State* (1921), 190 Ind. 611, 131 N. E. 375; *Goodman* v. *State* (1895), 141 Ind. 35, 39 N. E. 939.

For the error heretofore pointed out this cause is reversed with instructions to the lower court to sustain appellant's motion for a new trial.

Tremain, J., dissents with opinion.

### DISSENTING OPINION.

TREMAIN, J.—I regret my inability to agree with the majority of the court in a reversal of this cause. A study of the record is convincing that the appellant had a fair and impartial trial.

In presenting the question the majority opinion recites a statement of the facts presented to the lower court. The facts set out present the case most favorable toward appellant. Although a complete statement of the facts is unnecessary to present the one law question passed upon by the court, nevertheless the additional facts established by the evidence should be stated in order that a complete picture will be given of the case.

In addition to the facts recited, it is charged that

Sylvester and Orville Abel unlawfully and feloniously stole brass of the value of $150.00 from the Baltimore & Ohio Railroad Company; and that appellant "did then and there unlawfully and feloniously buy, receive, conceal and aid in the concealment of said property, he, the said Samuel Weinstein, then and there well knowing the same to have been feloniously stolen . . . ."

It is in evidence that the appellant was a junk dealer located at 503 Kentucky avenue, Indianapolis; that about 2:00 p. m., May 18, 1931, said Sylvester and Orville Abel brought to the appellant's junk yard 1,040 pounds of brass which they had theretofore stolen from the Baltimore & Ohio Railroad Company; that appellant purchased the same for the sum of three cents per pound, which he paid at the time; that he knew that the brass was stolen at the time of the purchase; that some four weeks prior thereto the appellant had purchased other brass from the same parties which he knew had been stolen; that appellant had been visited upon several occasions between the time of the first purchase of stolen brass and May 18, 1931, by detectives from both the railroad company and the city of Indianapolis, and had been interrogated upon the subject as to whether or not he had received any brass in his junk yard; that upon each occasion he denied having received any; that appellant knew that the railroad company did not sell brass to local dealers and had been warned not to buy such brass; that Mitchell and Delaney, two railroad detectives, called upon him sometime before the sale and purchase of the stolen brass for which he was prosecuted herein, and on one of those occasions was given the detective's address and was told to report any brass brought to his place of business; that no report was ever made by appellant; that appellant did not have a junk dealer's license as required by city ordinance and

had informed both the railroad and city detectives that he was not in the junk business; that some years prior to this transaction the appellant had been convicted of receiving stolen goods and was given a suspended sentence.

The evidence shows that immediately upon the purchase of the brass the appellant took it to the junk yard of J. Solotken, 340 W. Michigan street, a distance of about one and one-half miles from the appellant's junk yard; that the delivery to the Solotken junk yard was made about 3:00 p. m., May 18, 1931; that Solotken, the owner of the yard, was not present at the time of the delivery of the brass by appellant, but the same was received by his employee, who agreed to pay appellant five cents per pound for it, and gave him credit therefor upon Solotken's books; that when Mr. Solotken returned to his place of business his employee informed him of said purchase; that shortly thereafter two city detectives, Russell and Staggs, called at Solotken's junk yard upon an inspection tour and discovered the stolen brass, and upon inquiry learned that appellant had delivered the brass to that place the same afternoon; that the brass was of a reasonable value of ten to twelve cents per pound.

It is in evidence that immediately after said city detectives called at the Solotken junk yard, Mr. Solotken communicated with the appellant, who, together with his son, Martin, returned to the Solotken junk yard, and it was from there that Martin caused a letter or notice to be sent to the city detective office, according to his testimony. He testified that he gave the envelope containing the notice to a young lady clerk of Solotken and that she mailed the same on the evening of the 18th. Both appellant and his son, Martin, testified as to sending the notice to the city police headquarters on

the evening of the 18th, while the police officers testi-, fied that it did not reach them by mail, but was found on the afternoon of May 19 in a box maintained in the corridor of the police headquarters for the reception of such communications.

The next day, May 19, at about 2:00 p. m., the same city detectives, Russell and Staggs, testified that they called upon appellant and questioned him about the purchase of the stolen brass; that appellant answered by shrugging his shoulders; that when pressed for an answer and under threat of arrest, appellant admitted that he had purchased the brass from Abel and had not reported the same at that time; that he knew it was stolen; that as said detectives were leaving appellant's place they were called back and the appellant then gave them the license number of the thief's automobile, and at the same time gave the officers a fictitious name of the person from whom he had purchased the brass, although that person, Sylvester Abel, testified as a witness for the state and said that he and appellant were acquainted and that he had sold other stolen brass to appellant before that date; that the detective asked appellant why he did not hold the brass for forty-eight hours as required by law; that appellant answered by the shrug of his shoulders and said that he did not know. About an hour after the city detectives called upon appellant on the afternoon of May 19, the two railroad detectives, Mitchell and Delaney, called upon him; that these detectives had not been at appellant's place of business before on that day nor on the 18th; that these detectives were not called by the state to testify in chief, but were called only to give rebuttal testimony after appellant had closed his defense.

The question upon which the majority of this court has found reversible error arose upon the examination

of the appellant's son, Martin Weinstein, concerning a conversation had with the railroad detectives, Mitchell and Delaney, on the afternoon of May 19, at least an hour after the city detectives, Russell and Staggs, had been there, at which time they claimed they received the automobile license number from appellant.

Before discussing the alleged error it must be remembered that it is a rule of this court that it will not weigh conflicting evidence; that it will search the record to affirm a judgment, but will not search it to reverse a judgment, *Selz, Schwab & Co.* v. *Gullion* (1918), 187 Ind. 328, 119 N. E. 209; that it is presumed that the decision of the trial court is correct until the contrary is shown affirmatively, *New York, Chicago & St. Louis Railroad Co.* v. *Shields* (1916), 185 Ind. 704, 112 N. E. 762; that this presumption is one of the strongest known to the law and can only be overcome by the record which shows unequivocally that an error was committed. *Indianapolis Traction & Terminal Co.* v. *Hensley* (1917), 186 Ind. 479, 115 N. E. 934, 117 N. E. 854; *Head* v. *Doehleman* (1897), 148 Ind. 145, 46 N. E. 585; *McCutchen* v. *McCutchen* (1895), 141 Ind. 697, 41 N. E. 324; *Grimes* v. *Grimes* (1895), 141 Ind. 480, 40 N. E. 912; *Wolfe* v. *Evansville, etc., R. C.* (1894), 136 Ind. 383, 36 N. E. 213; *Taylor* v. *Birely* (1892), 130 Ind. 484, 30 N. E. 696.

It is a well established rule that one attacking a judgment must present a record which affirmatively shows that such judgment is erroneous.

The fifth clause of rule 22 of this court, among other things, provides that the brief shall contain, "under a separate heading of each error relied on, separately numbered points, stated concisely, and without argument, together with the authorities relied on . . ." It is incumbent upon the appellant to state concisely

under propositions, points, and authorities the particular question which he desires to present to the court, otherwise the question is waived. The only proposition stated in the appellant's brief which could be said to present the question of the court's refusal to permit Martin Weinstein to testify is quoted and set out in the majority opinion. This is appellant's proposition two in his brief. The quotation begins:

"The Court erred in refusing to permit Martin Weinstein . . ."

Under this proposition the appellant has the single point:

"When the proponent opens a general subject the opponent may go into any phase of that subject, and cannot be restricted to mere parts of a general and continuous subject which constitutes a unity." (Citing authorities.)

It will be noted that neither the proposition nor the point thereunder sets out the question and the offer to prove.

A review of the record discloses that several questions were propounded to the witness, Martin Weinstein, which provoked a dialogue between the court and the attorney, some of which was as follows:

"Q. What, if anything, was said by them or by you respecting the license number? (Referring to the conversation with Mitchell and Delaney on the afternoon of May 19.)

"Mr. Kelly: The state objects because it calls for hearsay and is self-serving.

"The Court: If this is conversation that the state went into then they have a right to go into that conversation, but I don't recall this being with Delaney.

"Mr. Joseph: I don't think it was gone into by the state.

"The Court: Objection sustained. To which ruling of the Court the defendant, by counsel, then and there at the time duly excepted.

"The Court: If it is the same conversation that

is all right, but this is another conversation with a detective by the name of Delaney. The state has not gone into that."

Then the question set out in the majority opinion was propounded to Martin Weinstein to which the court sustained the objection and the appellant made the offer therein set out, which need not be repeated. It is the ruling on that question and the offer to prove which the majority of the court holds to be reversible error. Several reasons exist why it is not error:

First, the law question is not presented to this court for the reason that the question propounded to the witness and the offer to prove are not set out either in the proposition or point in appellant's brief and is, therefore, waived.

Second, the objection was sustained to the question by the court before the offer to prove was made. Under this situation no question is presented to the court for decision for the reason that the offer to prove must be made before the court rules upon the question. *Gunder* v. *Tibbits* (1899), 153 Ind. 591, 608, 55 N. E. 762, where the court said:

"It has been repeatedly decided that the only proper practice is to propound the question to the witness on the stand, and, if objection to the question is made, to state to the court what the examiner proposes to prove by the witness's answer to the question, and then, if the objection is sustained, to reserve an exception to the ruling on the question."

This proposition is so well settled and the authorities are so numerous that it cannot be doubted.

Third, the form of the question is such that it could be answered by either "yes" or "no." It called upon the witness to state whether or not anything was said by either of these men about the license number upon the Ford coupe. The offer not only answered the ques-

tion, but went on to say that appellant would testify that Mitchell and Delaney stated that they had a license number with them and then added:

"and we offer to prove further by this witness that his father had given the information to these two men, or to Russell and Staggs prior to that time."

This last quoted portion cannot possibly be responsive to the question. Clearly the offer is broader and more comprehensive than the question. In support of this proposition see *The Masons' Union Life Insurance Association* v. *Brockman* (1898), 20 Ind. App. 206, at pages 210, 211 and 212, 50 N. E. 493. In this case the appellant introduced a witness, Ed. King, and propounded to him the following question:

" 'State to the jury whether you observed Mr. Brockman's habits and conduct previous to the time he went to the asylum, whether or not he was boisterous?' "

Upon objection, by appellee, to the question the appellant made the following offer:

" 'The defendant offers to prove by this witness in answer to this question and others that he had an acquaintance with Henry Brockman and had seen him both when drunk and sober for a long period of time, and was acquainted with the peculiarities and ordinary actions of said Henry Brockman when drunk; and offers further to prove that said Henry Brockman when drunk never was at any time noisy or boisterous, and that his conduct at the times when he saw him drunk since March 19, 1892, was the same as when he saw him drunk before that time.' "

The court refused to permit the question to be answered. In passing upon that question the Appellate Court said:

"The offer to prove was so much broader than the question, and included so many elements not embraced by the question, that there was no available error in excluding it. An offer to prove a fact or facts by 'other questions,' which 'other questions'

are never asked, is not reviewable in an appellate tribunal. The question asked the witness might have been properly answered, for it asked the witness to state a distinct fact, but where error is predicated upon the exclusion of evidence, the only way to present it is to ask the question, and then it is for the court to determine its competency. When a litigant offers to prove a fact or facts in answer to a question asked of a witness, and 'other questions,' which are never asked, there is no error in refusing the offer, if the offer embraces more and is of wider range than the question asked."

Citing *Gipe et al.* v. *Cummins* (1889), 116 Ind. 511, 19 N. E. 466; *City of Terre Haute* v. *Hudnut* (1887), 112 Ind. 542, 13 N. E. 686; *Binford* v. *Young* (1888), 115 Ind. 174, 16 N. E. 142. Also *Lessig* v. *Davis* (1920), 72 Ind. App. 111, p. 115, 125 N. E. 179, where the court said:

"Even if we concede that said offer was in part competent, the trial court was not required to separate the competent from the incompetent matter therein contained. The court did not err in excluding said offered testimony."

Citing the Masons' case, *supra*. See also *Westervelt* v. *National Manufacturing Co.* (1904), 33 Ind. App. 18, 69 N. E. 169; *Pittsburgh, etc., R. Co.* v. *Kephert* (1916), 61 Ind. App. 621, 112 N. E. 251, beginning at the bottom of page 625.

Under the foregoing rule adhered to by this and the Appellate Court, no reversible error can be predicated upon the action of the trial court in excluding the offered testimony. This court cannot know what the question propounded to the witness was or what the offer was except by searching the record. This the court is prohibited from doing except for the purpose of affirming the lower court.

It is not questioned that information concerning the automobile license number had been furnished to the authorities prior to the time that Mitchell and Delaney

called upon appellant in the afternoon of May 19. The appellant was permitted to introduce in evidence all the facts in his possession concerning the mailing of the notice on the evening of May 18, and that he gave the license number to the city detectives, Russell and Staggs, on the afternoon of the 19th. At most, the appellant, by the question propounded to his son, was asking what "was said by either of these men about the license number on the Ford coupe." Whether they answered that they had or did not have the license number, such answer could not affect the case materially. The majority opinion is in error when it states that one of the determining factors in the case is whether or not a report had been sent to the police headquarters. This cannot be a determining factor in the case.

The appellant was prosecuted for receiving stolen goods under the statute. The statute in part is as follows:

"Whoever buys, receives, conceals, or aids in the concealment of anything of value, which has been stolen, taken by robbers, embezzled, or obtained by false pretense, knowing the same to have been stolen, taken by robbers, embezzled, or obtained by false pretense . . ."

It will be noted that the statute under which the indictment is drawn is in the co-ordinate; that proof that the appellant did either buy, receive, conceal, or aid in the concealment of the property is sufficient. As a matter of law there are three vital elements in the proof of the crime. They are (1) the larceny of the goods, (2) the subsequent reception of the goods by the accused, and (3) that the accused knew the goods were stolen. *Carpenter* v. *State* (1921), 190 Ind. 611, p. 613, 131 N. E. 375. As a matter of evidence the three elements of the crime were proved; the evidence justified the court in rendering a judgment of guilty.

Sylvester Abel testified that he and his brother stole the brass from the railroad yard and took it to the appellant. Appellant's son testified that the appellant bought the brass from the Abels. Appellant admits in his brief and in his testimony that he knew the goods were stolen. These matters having been established, the collateral issue as to the number of the license on the Abel automobile can be of no importance. The city police officers, Russell and Staggs, were wholly disinterested witnesses. Their evidence strongly convicts the appellant. The only interest they could have had in the matter was to apprehend and convict the guilty party. As far as the record discloses there is nothing against their honesty and integrity and every reason appears to exist as to why the trial court should believe their testimony. The thief, Abel, is at least as worthy of belief as would be the appellant and his son, both of whom were vitally interested in the outcome of the trial. The record is such that this court should not reverse the case even if it were permitted to weigh evidence.

In my opinion the judgment of the lower court should be affirmed.